UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

NORTH JERSEY MEDIA GROUP INC.,

      Plaintiff,

v.

DEPOSITPHOTOS, INC. d/b/a
DEPOSITPHOTOS.COM,

      Defendant.

Docket No. 12-CV-04785-JGK

**DEPOSITPHOTOS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

Facts...................................................................................................... 1

Argument................................................................................................ 3

I.      Standard of Review.................................................................... 3

II.     The Court Lacks Subject Matter Jurisdiction Over NJMG's Claims
Because None of the Alleged Acts of Infringement Took Place Within
the United States......................................................................... 3

III.    DepositPhotos Is Entitled to Judgment Because NJMG Has Not And
Cannot Allege Volitional Conduct on the Part of DepositPhotos............ 5

IV.    DepositPhotos is Entitled to Safe Harbor Protections Under the
Digital Millennium Copyright Act.................................................... 7

       1.    DepositPhotos Is A "Service Provider"............................... 8

       2.    DepositPhotos Has Adopted A Reasonable Repeat Infringer Policy 10

       3.    DepositPhotos Does Not Interfere With Standard Technical
Measures................................................................ 10

V.     DepositPhotos is Immune From Liability Under the DMCA................. 10

       1.    DepositPhotos Did Not Have Actual or Constructive Knowledge of
the Alleged Infringement................................................... 11

       2.    DepositPhotos Did Not Receive a Direct Financial Benefit From
the Allegedly Infringing Activity............................................ 13

       3.    DepositPhotos Maintained A Designated Agent to Receive Notice
of Alleged Infringement...................................................... 15

       4.    Upon Notice, DepositPhotos Expeditiously Removed the
Allegedly Infringing Files.................................................. 15

Conclusion.............................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                    Page No.

*In re Aimster Copyright Litig.,*
    252 F. Supp.2d 634 (N.D. Ill. 2002)........................................................   8

*Am. Broad. Companies, Inc. v. Aereo, Inc.,*
    134 S. Ct. 2498 (2014) ......................................................................   5

*Armstrong v. Virgin Records, Ltd.,*
    91 F. Supp.2d 628 (S.D.N.Y. 2000) .................................................   4

*Buckley v. Colvin,*
    2014 U.S. Dist. LEXIS 25471 (S.D.N.Y. 2014) ...............................   3

*Capitol Records, Inc. v. MP3tunes, LLC,*
    821 F. Supp.2d 627 (S.D.N.Y. 2011) .............................................   7, 14

*Capitol Records v. MP3tunes, LLC,*
    2014 U.S. Dist. LEXIS 11218 (S.D.N.Y. Jan. 29, 2014) ................   12

*Capitol Records, LLC v. Vimeo, LLC,*
    2013 U.S. Dist. LEXIS 133655 (S.D.N.Y. Sept. 18, 2013) ............   8, 9

*CoStar Group, Inc. v. Loopnet, Inc.,*
    373 F.3d 544 (4th Cir. 2004).............................................................   6

*Disney Enters. v. Hotfile Corp.,*
    798 F. Supp. 2d 1303 (S.D. Fla. 2011)............................................   6

*Filmvideo Releasing Corp. v. Hastings,*
    668 F.2d 91 (2d Cir. 1981) ...............................................................   4

*Jacobs v. Carnival Corp.,*
    2009 U.S. Dist. LEXIS 31374 (S.D. N.Y. 2009) .............................   4

*Kelly v. L.L. Cool J.,*
    145 F.R.D. 32 (S.D.N.Y. 1992)........................................................   4

*Matos v. Colvin,*
    2014 U.S. Dist. LEXIS 104944 (S.D.N.Y. 2014) ...........................   3

*Obodai v. Demand Media, Inc.,*
    2012 WL 2189740 (S.D.N.Y. June 13, 2012)..................................   9, 10

*Perfect 10, Inc. v. CCBill LLC,*
    488 F.3d 1102 (9th Cir. 2007).........................................................   11, 14

*Quality King Distrib., Inc. v. L'anza Research Int'l,*
    523 U.S. 135 (1998) ..........................................................................   4

*Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.,*
    907 F. Supp. 1361 (N.D. Cal. 1995).................................................   14

*Sellers v. M.C. Floor Crafters*, Inc..,
    842 F.2d 639 (2d Cir. 1988)...................................................................... 3

*The Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008)..................................................................... 5, 6

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010)........................................................................ 12

*UMG Recordings, Inc. v. Veoh Networks, Inc.*,
    718 F.3d 1006 (9th Cir. 2013).................................................................. 7, 11

*United Dictionary Co.* v. *G. & C. Merriam Co.*,
    208 U.S. 260 (1908) ................................................................................. 3

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2012)..................................................................... 8, 11-13

*Well-Made Toy Manufacturing Corp. v. Lotus Onda Industrial Co., Ltd.*,
    2003 U.S. Dist. LEXIS 68 (S.D.N.Y. 2003) ............................................ 4

*Wolk v. Kodak Imaging Network, Inc.*,
    840 F. Supp.2d 724 (S.D.N.Y. 2012) ................................................. 5, 7-10, 13, 14

**Other** ........................................................................................Page No.

M. Nimmer & D. Nimmer, Copyright (2012) ................................................. 3

W. Patry, Copyright (2012) .......................................................................... 3

In the present case, Plaintiff North Jersey Media Group ("NJMG") alleges that two photographs of a United States Postage Stamp, based on a photograph to which NJMG allegedly owns the copyright, were uploaded to Defendant DepositPhotos, Inc. d/b/a DepositPhotos.com ("DepositPhoto")'s website, depositphotos.com.  Complaint, ¶ 9.  The photographs of the stamp – one of which was uploaded by a DepositPhotos user in Spain and the other by a user in Germany – were ultimately downloaded by two other users, one of which was the Plaintiff itself. Verified Counterclaim, ¶¶ 19-22.  Other than NJMG, the photograph of the stamp was downloaded but once (before being removed from the site by DepositPhotos) by a user located in Italy.  *Id.*, ¶ 23.  DepositPhotos received a grand total of $2.50 in revenue from the transactions, which form the basis of NJMG's claim for copyright infringement.  *Id.*, ¶ 24.

Pursuant to Fed. R. Civ. P. 12(c), DepositPhotos moves for judgment on the pleadings because: (a) the allegedly infringing conduct all occurred outside of the United States, depriving this Court of subject matter jurisdiction, (b) the Complaint fails to allege volitional conduct on the part of DepositPhotos, and (c) DepositPhotos is entitled to immunity from liability under the Digital Millennium Copyright Act ("DMCA").  In further support of its Motion, DepositPhotos states as follows.

## Facts

DepositPhotos operates a website at www.depositphotos.com which allows users to upload their original artwork, photographs, and videos to be made available for licensing to other users of the website (the "DepositPhotos Website").  Verified Counterclaim, ¶ 5.  DepositPhotos hosts more than 25 million files which have been uploaded to the DepositPhotos Website by its users.  *Id.*, ¶ 6.  DepositPhotos requires that its users only upload files which do not improperly

1

contain the intellectual property of anyone other than the person uploading the file.  *Id.*, ¶ 7.

DepositPhotos requires that the uploader of a file affirm that he or she owns the intellectual

property to a file to upload the file to the DepositPhotos Website.  *Id.*, ¶ 8.  Users must agree to

these terms when they first sign up to use the DepositPhotos Website, and again affirm the terms

when they upload new files.  *Id.*, ¶ 10.  Users who supply files to the DepositPhotos Website are

required, at the time of initial registration, to provide copies of their government issued

identification documents (such as passports).  *Id.*, ¶ 9.

Because files are uploaded and downloaded by the users of the DepositPhotos Website,

and are stored on the websites solely at the direction of the users, DepositPhotos does not itself

upload or download the files available on the DepositPhotos Website.  *Id.*, ¶¶14-17.  Therefore,

DepositPhotos maintains a designated agent for the receipt of claims of infringement pursuant to

the requirements of 17 U.S.C. § 512, the Digital Millennium Copyright Act (the "DMCA").  *Id.*,

¶ 11.  It also implemented a repeat infringer policy to address any repeat infringers on its

website.  *Id.*, 12.  DepositPhotos receives very few complaints about the files uploaded by its

users, getting less than 20 complaints in a year, with less than 10 in the past twelve months.  *Id.*,

¶ 18.  Again, this is in the context of the approximately 25 million files available on the

DepositPhotos Website.

Copies of a certain stamp alleged to include rights owned by the Plaintiff in the present

action (the "Flag Raising Stamp") were uploaded by two users of the DepositPhotos Website.

One of these users is a resident of Spain and the other is a resident of Germany.  *Id.*, ¶ 19.  The

images were made available for editorial purposes only.  *Id.*, ¶ 21.  Those files were only

downloaded by two third parties – one of those was an agent of the Plaintiff, and the other was a

user in Italy.  *Id.*, ¶¶ 22-23.  DepositPhotos earned less than $2.50 from these downloads – with $2.13 of it coming from NJMG.  *Id.*, ¶ 24.

DepositPhotos was unaware that the Flag Raising Stamp uploaded to the DepositPhotos Website by its users was claimed to be infringing until it received a demand letter from NJMG in the end of April of 2014.  *Id.*, ¶ 25.  DepositPhotos then expeditiously disabled access to the Flag Raising Stamps within days on May 5, 2014.  *Id.*, ¶ 26.

**<u>Argument</u>**

**I.       <u>Standard of Review</u>**

"Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for, and a court may grant, judgment on the pleadings where the material facts are undisputed and where a party is entitled to judgment as a matter of law based upon the pleadings. *Matos v. Colvin*, 2014 U.S. Dist. LEXIS 104944 (S.D.N.Y. 2014) (*citing Sellers v. M.C. Floor Crafters, Inc..*, 842 F.2d 639, 642 (2d Cir. 1988)).  "The Court reviews Rule 12(c) motions for judgment on the pleadings under the same standard as Rule 12(b)(6) motions to dismiss. . . . Therefore, to survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Buckley v. Colvin,* 2014 U.S. Dist. LEXIS 25471, 8-9 (S.D.N.Y. 2014) (internal citations and quotation marks omitted).

**II.      <u>The Court Lacks Subject Matter Jurisdiction Over NJMG's Claims Because None of the Alleged Acts of Infringement Took Place Within the United States.</u>**

The Copyright Act, it has been observed time and again, does not apply extraterritorially. *See, e.g., United Dictionary Co.* v. *G. & C. Merriam Co.*, 208 U.S. 260, 264 (1908); 4 M. Nimmer & D. Nimmer, Copyright §17.02, p. 17-18 (2012) (hereinafter Nimmer) ("[C]opyright laws do not have any extraterritorial operation."); 4 W. Patry, Copyright § 13:22, p. 13-66 (2012)

(hereinafter Patry) ("Copyright laws are rigorously territorial."); *Filmvideo Releasing Corp. v. Hastings,* 668 F.2d 91, 93 (2d Cir. 1981) ("copyright laws do not have extraterritorial application"); *Quality King Distrib., Inc. v. L'anza Research Int'l*, 523 U.S. 135, 154 (1998) (Ginsburg, J., concurring) ("Copyright protection is territorial.  The rights granted by the United States Copyright Act extend no farther than the nation's borders."); *Armstrong v. Virgin Records, Ltd*., 91 F. Supp.2d 628, 634 (S.D.N.Y. 2000) ("As a general principle, it is not seriously disputed that United States copyright laws do not have extraterritorial effect, and that infringing acts that take place entirely outside of the United States are not actionable under our copyright laws.").

To survive a motion to dismiss, a complaint alleging copyright infringement must properly plead five factors: (1) which specific works are the subject of the action, (2) that the plaintiff is the owner of the works in question, (3) that the copyrights have been registered in accordance with the statute, (4) by what acts and during what time the defendant infringed the copyright, and (5) that the specific infringements occurred within the United States.  *See Jacobs v. Carnival Corp.,* 2009 U.S. Dist. LEXIS 31374, *12 (S.D. N.Y. 2009) (dismissing under Rule 8 and Rule 12(b)(6) plaintiff's claim for copyright infringement that failed to allege that the acts of infringement occurred within the United States) (*citing Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992)).

Federal Courts have treated the extraterritoriality question "as a jurisdictional issue.  Infringing acts which take place entirely outside the United States are not actionable under United States copyright laws.  A finding of direct infringement under U.S. Copyright law must be based, at least in part, on a predicate infringing act in the United States."  *Well-Made Toy*

*Manufacturing Corp. v. Lotus Onda Industrial Co., Ltd.,* 2003 U.S. Dist. LEXIS 68, *14 (S.D.N.Y. 2003).

In the present case, the two instances of the image of the Flag Raising Stamp being uploaded by users to the DepositPhotos Website were by one user located in Germany and the other in Spain.  Verified Counterclaim, ¶ 19.  And, other than the Plaintiff itself, the sole instance of a user downloading the image of the Flag Raising Stamp was by a user located in Italy.  *Id.*, ¶ 23.  To the extent that infringing acts may have occurred, then, they took place entirely outside of the United States.  As such, the allegedly infringing acts are wholly extraterritorial in nature and cannot form the basis of the present action.  As such, the Court lacks subject matter jurisdiction over the present case and it must be dismissed in its entirety.

### III.    DepositPhotos Is Entitled To Judgment Because NJMG Has Not And Cannot Allege Volitional Conduct on the Part of DepositPhotos.

To state a claim for copyright infringement, a plaintiff must show that the defendant engaged in a volitional act causing the copying of the copyrighted material at issue.  *The Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008); *Wolk v. Kodak Imaging Network, Inc.,* 840 F. Supp.2d 724, 741-42 (S.D.N.Y. 2012) ("Direct liability requires 'volitional conduct' that 'causes' the infringement.").  As the United States Supreme Court recently held:

> A defendant may be held directly liable only if it has engaged in volitional conduct that violates the Act. . . .  Every Court of Appeals to have considered an automated-service provider's direct liability for copyright infringement has adopted that rule. . . .  Although we have not opined on the issue, our cases are fully consistent with a volitional-conduct requirement.  For example, we gave several examples of direct infringement in *Sony,* each of which involved a volitional act directed to the plaintiff's copyrighted material.

*Am. Broad. Companies, Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2512-13 (2014) (multiple citations omitted).

The volitional conduct requirement – a fundamental element of the Plaintiff's claim – requires that there be sufficient allegations that the defendant engaged in volitional conduct with a nexus sufficiently close and causal to the alleged infringement such that it was the defendant, itself, who actually trespassed on the rights of the copyright owner.  *Cartoon Network,* 536 F.3d 121, 131-32 (2d Cir. 2008); *CoStar Group, Inc. v. Loopnet, Inc.,* 373 F.3d 544, 549 (4th Cir. 2004) ("[S]omething more must be shown than mere ownership of a machine used by others to make illegal copies[;] [t]here must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner.").  Merely alleging that the defendant operated a service that "allows users to upload and download copyrighted material without volitional conduct" is insufficient even on a site where the Court finds the existence of "massive infringement."  *Disney Enters. v. Hotfile Corp.,* 798 F. Supp. 2d 1303, 1308 (S.D. Fla. 2011).  In granting the defendants' Motion to Dismiss claims of direct copyright infringement, the *Hotfile* Court held that, "[N]othing in the complaint alleges that Hotfile or Mr. Titov took direct, volitional steps to violate the plaintiffs' infringement.  There are no allegations, say, that Hotfile uploaded copyrighted material.  Therefore, under the great weight of authority, the plaintiffs have failed to allege direct copyright infringement."

In the present case, there is simply no allegation – nor could there be any allegation – of volitional conduct on the part of DepositPhotos.  Users, of their own accord, select the files that they wish to upload to the DepositPhotos.com website.  Verified Counterclaim, ¶ 14.  Other users decide, of their own accord, which files they wish to download.  *Id.*, ¶ 15.  DepositPhotos does not itself upload or download the files available on the DepositPhotos Website.  *Id.*, ¶ 16.  The files available on the DepositPhotos Website are stored there at the directions of its users.

*Id.*, ¶ 17.  As the Supreme Court noted, every Court of Appeals to consider just such an automated process (including the Second Circuit) has found it to be non-volitional.  Such is the case here as well.  Accordingly, because no volitional conduct has been alleged or could be alleged, NJMG's complaint must be dismissed.

**IV.    DepositPhotos is Entitled to Safe Harbor Protections Under the Digital Millennium Copyright Act.**

Finally, even if there had been allegations of conduct which could bring NJMG's complaint within the Court's jurisdiction (which there is not) and allegations of volitional behavior which there is not), the Plaintiff's complaint would still have to fail as a matter of law because DepositPhotos is entitled to immunity from liability under the DMCA's safe harbor provisions.

The purpose of the DMCA, and the DMCA's safe harbors, is to balance the competing interests between protecting intellectual property rights of content holders and protecting the rights of online service providers so as to promote innovation and the growth of services on the Internet.  *Capitol Records, Inc. v. MP3tunes, LLC*, 821 F. Supp.2d 627, 646 (S.D.N.Y. 2011) (purpose of DMCA is "innovation and growth of internet services").  In enacting the DMCA, "Congress recognized that '[i]n the ordinary course of their operations service providers must engage in all kinds of acts that expose them to potential copyright infringement liability.'" *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting S. Rep. No. 105-190, at 8 (1998)).  Congress was aware that the services provided by service providers could be "misused to facilitate copyright infringement," but it "was loath to permit the specter of liability to chill innovation that could also serve substantial socially beneficial functions."  *Id.  See also Wolk v. Kodak Imaging Network, Inc.*, 2011 U.S. Dist. LEXIS 27541,

at *25 (S.D.N.Y. Mar. 17, 2011) (purpose of DMCA is "to facilitate the growth of electronic commerce, not squelch it.").

 "To qualify for the 'safe harbor' provisions under the DMCA, a party must meet certain threshold requirements.  Specifically, the party:  (1) must be a 'service provider' as defined by the statute; (2) must have adopted and reasonably implemented a policy for the termination in appropriate circumstances of users who are repeat infringers; and (3) must not interfere with standard technical measures used by copyright owners to identify or protect copyrighted works." *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2012).  *See also* 17 U.S.C. § 512(i), (k).  Once these prerequisites are met, a service provider becomes eligible for safe harbor from liability arising from, among other things, "storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider."  17 U.S.C. § 512(c)(1).

In the present case, DepositPhotos meets each of these threshold requirements

1.   DepositPhotos Is A "Service Provider"

The DMCA broadly defines a "service provider" as "a provider of online services or network access, or the operator of facilities therefor . . . ."17 U.S.C. § 512(k)(1)(B).  This definition is "intended to encompass a broad set of Internet entities."  *Wolk*, 840 F. Supp.2d at 744.  Indeed, courts have recognized that the DMCA defines the term "service provider" "so broadly that [they have] trouble imagining the existence of an online service that would not fall under the definitions."  *Capitol Records, LLC v. Vimeo, LLC*, 2013 U.S. Dist. LEXIS 133655, at *21 (S.D.N.Y. Sept. 18, 2013) (quoting *In re Aimster Copyright Litig.*, 252 F. Supp.2d 634, 658 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003)).  Accordingly, courts have held that a wide variety of online entities—including e-commerce websites that allow users to sell goods or

8

services, and provide services to facilitate those sales including payment processing and shipment services—qualify as service providers within the meaning of the DMCA.  *See*, *e.g.*, *Capitol Records*, 2013 U.S. Dist. LEXIS 133655, at **22-23 ("The parties do not dispute that Vimeo is a provider of online services that hosts and distributes user material by permitting its users to upload, share and view videos.  Even though Vimeo's activities are not limited to such, the Court concludes that Vimeo qualifies as a service provider under § 512(k)(1)(B)'s expansive definition." (internal citations omitted)); *Wolk*, 840 F. Supp.2d at 744 ("Because Photobucket offers a site that hosts and allows online sharing of photos and videos at the direction of users, Photobucket, like YouTube.com or Veoh.com, qualifies as a 'service provider' under § 512(k)(1)(B)."); *Obodai v. Demand Media, Inc*., 2012 WL 2189740, at *4 (S.D.N.Y. June 13, 2012) ("Because the defendant operates a website that permits users to post and share materials, it falls within the broad definition of a service provider under Section 512(k)(1)(B).").

Indeed, the *Wolk* case is particularly apt inasmuch as the services offered by Photobucket in that case – *i.e.,* the ability of users to upload original photographs, videos, and artwork to the website, from which other users could order prints, calendars, or other gift items – are similar to those offered in by DepositPhotos in the present case.  Under *Wolk,* DepositPhotos easily falls within the broad definition of "service provider" under the DMCA.  DepositPhotos provides an online service through which its users may upload original photographs, videos, and artwork. Other members are then able to search for such original photographs, videos, and artwork and are able to license those works for use in editorial and commercial works.  Such services qualify DepositPhotos as a "service provider" under the DMCA.

2.      DepositPhotos Has Adopted A Reasonable Repeat Infringer Policy

Although the actual incidents of content owners alleging that their works were infringed on DepositPhotos.com has been remarkably low (less than twenty incidents per year (Counterclaim, ¶ 18)), DepositPhotos has adopted and reasonably implemented a repeat infringer policy. Specifically, as is noted in the Verified Counterclaims, it is DepositPhotos' policy that the account of any user found to have improperly uploaded three infringing files within any 12 month period will be terminated. Verified Counterclaim, ¶¶ 12.

3.      DepositPhotos Does Not Interfere With Standard Technical Measures

A service provider accommodates standard technical measures by not interfering with mechanisms copyright owners use to identify or protect copyrighted works. *See* 17 U.S.C. § 512(i)(2); *Wolk*, 840 F. Supp.2d at 745; *Obodai,* 2012 WL 2189740, at *5. "An example of a party's failure to comply with standard technical measures may include conduct that advises or encourages users to conceal a work's copyrighted status." *Obodai,* 2012 WL 2189740, at *5. NJMG has not alleged – and cannot allege – that DepositPhotos interferes with standard technical measures in any way. Verified Counterclaim, ¶ 13. DepositPhotos does not advise or encourage users to conceal a work's copyrighted status and, to the contrary, DepositPhotos repeatedly cautions users that users may only post those files which they are legally permitted to post. *Id.*, ¶¶ 7-10.

Accordingly, DepositPhotos has met the threshold requirements for safe harbor under the DMCA.

**V.      DepositPhotos is Immune From Liability Under the DMCA.**

Once the threshold test is met, a defendant is entitled to immunity from liability for copyright infringement so long as four factors are met: (1) either it lacked actual or constructive

10

knowledge of the infringement or, when it gained such knowledge, it acted expeditiously to remove the infringing content; (2) it did not receive a direct financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; (3) it maintained a designated agent to receive notices of claimed infringement; and (4) upon receipt of such notice, it responded expeditiously to remove or disable access to the material that is alleged to be infringing.  17 U.S.C. § 512(c)(1)(2).   In the present case, DepositPhotos meets each of the required tests to qualify for immunity.

      1.     DepositPhotos Did Not Have Actual or Constructive Knowledge of the Alleged Infringement.

Under section 512(c)(l)(A) a service provider is entitled to immunity if it did not have actual or constructive (or "red flag") knowledge of the infringement or if, when it gains such knowledge, that the service provider respond expeditiously to remove the infringing content.  17 U.S.C. § 512(c)(1)(A).  In enacting the Digital Millennium Copyright Act, Congress made a "considered policy determination" to place the "burden of policing copyright infringement — identifying the potentially infringing material and adequately documenting infringement — squarely on the owners of the copyright."  *Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1113 (9th Cir. 2007).  This means that the copyright holder is required to identify the allegedly infringing material and bring it to the attention of the service provider.  The service provider is not obliged in any way to search for – or to identify – allegedly infringing materials even if it had a general awareness that infringement may have been occurring on its site.  *See* 17 U.S.C., §512(m); *Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1113 (9th Cir. 2007); *Viacom Int'l, Inc. v. YouTube, Inc.,* 2012 U.S. App. LEXIS 6909 (2d Cir. N.Y. 2012).  *See also UMG Recordings,* 718 F.3d at 1022 ("Copyright holders know precisely what materials they own, and are thus better able to efficiently identify infringing copies than service providers like Veoh,

11

who cannot readily ascertain what material is copyrighted and what is not.") (*citing* S. Rep. No. 105-190, at 48 ("[A] [service] provider could not be expected, during the course of its brief cataloguing visit, to determine whether [a] photograph was still protected by copyright or was in the public domain; if the photograph was still protected by copyright, whether the use was licensed; and if the use was not licensed, whether it was permitted under the fair use doctrine.")).

In the present case, NJMG makes no allegation (and cannot reasonably make any allegation), that DepositPhotos had actual knowledge that the two files at issue in this action (of the 25 million plus files uploaded to DepositPhotos) were allegedly infringing prior to receiving notice from NJMG.  To the contrary, DepositPhotos did not know (and had no reason to know) of the allegedly infringing nature of the two files prior to receipt of notice from NJMG. Verified Counterclaim, ¶ 25.

Similarly, DepositPhotos lacked constructive (or "red flag") knowledge of any such alleged infringement.  Constructive, or "red flag," knowledge requires proof that the service provider was subjectively aware of facts that would have made the specific and identifiable instances of infringement of the photograph objectively obvious to any reasonable person. *Viacom*, 676 F.3d at 31; *Capitol Records v. MP3tunes, LLC*, 2014 U.S. Dist. LEXIS 11218, at **20-21 (S.D.N.Y. Jan. 29, 2014).  A service provider does not have "red flag" awareness of infringement simply because it may have generalized knowledge that infringement occurs on its website.  *See, e.g., Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 106-07 (2d Cir. 2010) (eBay's "generalized" knowledge of counterfeit goods being sold on its website was insufficient to defeat DMCA immunity).  Although generalized knowledge of infringement is insufficient to trigger "red flag" knowledge of specific infringing activity, in the present case, even an

allegation of generalized knowledge is lacking.  Given the incredibly small number of files reported to DepositPhotos as being potentially infringing, it had no  reason to believe that infringement was prevalent on its site (which it is not), and certainly no reason to suspect that the two files (out of 25 million) were specifically infringing.

Finally, when DepositPhotos was notified by NJMG that the two files in question were potentially infringing, DepositPhotos immediately disabled all access to such files.  Verified Counterclaim, ¶¶ 26.  As such, DepositPhotos meets the first factor for immunity from liability.

   2.   DepositPhotos Did Not Receive a Direct Financial Benefit From the
        Allegedly Infringing Activity.

A service provider is entitled to immunity under § 512(c), if it does not receive a financial benefit directly attributable to the activity in a case of which the service provider has the right and ability to control such activity.  In the present case, DepositPhotos neither has the right and ability to control the infringing activity, nor did it receive any direct financial benefit from the allegedly infringing activity.

The Second Circuit has held that "the right and ability to control infringing activity under § 512(c)(1)(B) requires something more than the ability to remove or block access to materials posted on a service provider's website."  *Viacom*, 676 F.3d at 38 (internal cites and quotation marks omitted).  Instead, "such a right and ability to control must take the form of prescreening content, rendering extensive advice to users regarding content and editing user content."  *Wolk*, 840 F. Supp.2d at 748.  In the present case, NJMG does not allege (and cannot allege) that DepositPhotos exercise the control over content required to meet the definition of a provider that "has the right and ability to control the infringing activity."  Users select the files that they want to upload without assistance from DepositPhotos.  Under similar circumstances, this Court has found the necessary control lacking.  *Wolk*, 840 F. Supp.2d at 748 ("Photobucket

13

does not engage in such activities, and, considering that millions of images are uploaded daily, it is unlikely that this kind of prescreening is even feasible.").

Even if DepositPhotos *did* have the right and ability to control the allegedly infringing activity, it did not receive a direct financial benefit attributable to such alleged infringement. First, as a simply practical matter, the total "financial benefit" received by DepositPhotos in connection with the files at issue in this case was a whopping $2.50, which amount includes the $2.13 payment for the file downloaded by NJMG itself.  Verified Counterclaim, ¶ 24.  Clearly such a *de minimus* amount is not what Congress had in mind when it placed limitations on a service providers ability to claim immunity under the DMCA.  Moreover, even this miniscule amount is not a "direct financial benefit" attributable to the alleged infringement.  Cases examining what constitutes a direct financial benefit have stressed the difference between a service provider that receives a financial benefit as a result of providing services generally and one that receives a financial benefit directly attributable to infringing activity.  "Where there is no evidence in the record that the service provider attracted or retained subscriptions because of the infringement or lost subscriptions because of its eventual obstruction of the infringement, no reasonable jury could conclude that the service provider received a direct financial benefit from providing access to the infringing material."  *Wolk*, 840 F. Supp.2d at 748 (*citing Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007)); *see also MP3tunes*, 821 F.Supp.2d at 645 ("[T]he financial benefit must be attributable to the infringing activity."); *Perfect 10,* 488 F.3d at 1117 (9th Cir. 2007) ("[T]he relevant inquiry is whether the infringing activity constitutes a draw for subscribers, not just an added benefit …"); *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.,* 907 F. Supp. 1361, 1377 (N.D. Cal. 1995) (finding no "direct

financial benefit" where there was no evidence that the allegedly infringing materials "in any way enhances the value of Netcom's services to subscribers or attracts new subscribers.").

The same holds true here.  There is no allegation (nor could there be any allegation) that the files at issue – downloaded only once by someone other than the plaintiff itself – was a "draw," attracting new subscribers to the DepositPhotos Website.  Accordingly, DepositPhotos remains entitled to immunity under the DMCA.

     3.     DepositPhotos Maintained A Designated Agent to Receive Notice of Alleged Infringement.

As the records from the United States Copyright Office (and the DepositPhotos website) conclusively prove, at all relevant times, DepositPhotos maintained a designated agent to receive notice of alleged infringement.  Verified Counterclaim, ¶ 11.  As such, DepositPhotos is entitled to immunity under the DMCA.

     4.     Upon Notice, DepositPhotos Expeditiously Removed the Allegedly Infringing Files.

Finally, although NJMG's demand letter did not actually meet the legal requirements of a DMCA takedown notice, DepositPhotos nonetheless treated the letter as such and expeditiously removed the allegedly infringing photographs from its site.  Verified Counterclaim, ¶¶ 25-26.  Having met this factor as well, DepositPhotos is entitled to immunity from liability for copyright infringement.

Because DepositPhotos is entitled to immunity from liability for Copyright Infringement under the DMCA, the complaint must be dismissed in its entirety.

## Conclusion

For the reasons stated hereinabove, judgment on the pleadings must be entered in DepositPhotos favor and the Plaintiff's Complaint must be dismissed in its entirety.

15

Dated: August 12, 2014

Respectfully submitted,
DepositPhotos, Inc., d/b/a DepositPhotos.com,
By its attorneys,

/s/ Martin F. Gusy (MG2504)
Martin F. Gusy, Esq.
Matthew J. Weldon, Esq.
COZEN O'CONNOR
277 Park Avenue
New York, NY 10172
mgusy@cozen.com
(212) 883-4900

/s/ Evan Fray-Witzer
Evan Fray Witzer (*pro hac vice pending*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Tel:    (617) 426-0000
Fax:    (617) 507-8043
Evan@CFWLegal.com

/s/ Matthew Shayefar
Matthew Shayefar (*pro hac vice pending*)
Valentin Gurvits (*pro hac vice pending*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel:    (617) 928-1800
Fax:    (617) 928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com